51 CCPA

### Application of Helmut KLUG and Karl-Heinz Mittelberger.

### Patent Appeal No. 7160.

United States Court of Customs and Patent Appeals.

July 9, 1964.

Connolly & Hutz, Wilmington, Del. (Earl Christensen, Wilmington, Del., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

Klug and Mittelberger appeal from the board's affirmance of the rejection of claims 26, 27, 39, 40, 43 to 46 and 48, of their patent application.[1]

The invention relates to a process of chlorinating low pressure polyethylene and the product produced thereby. The low pressure polyethylene to be chlorinated is characterized by a predominantly linear molecular structure and a high degree of crystallinity.

Claims 39 and 48 read:

"39. The process for the manufacture of solid chlorinated polyethylene which comprises suspending solid granular polyethylene having predominantly a linear molecular structure, a high degree of crystallinity, a molecular weight in the range from 12,000–2,000,000 and an individual grain diameter of 0.1–300 microns, in 3 to 30 parts of water for each part of polyethylene and contacting this suspended polyethylene with chlorine at a temperature in the range from 100 to 110°C., as a lower limit, to 150°C.

1. Serial No. 643,499, filed March 4, 1957.

as the upper limit, the chlorinated polyethylene formed at this temperature being non-crystalline, the lower temperature limit depending on the molecular weight of polyethylene in such a way that the higher temperature is employed with the polyethylene of the higher molecular weight, whereby the polyethylene may be chlorinated to a chlorine content of up to 70% by weight.

"48. A solid chlorination product of a polyethylene having a molecular weight of 12,000 to 2,000,000 and individual grain diameter of 0.1–300 microns, said chlorination product having predominantly linear molecular structure and being non-crystalline, said product being obtained by chlorinating a predominantly linear, highly crystalline polyethylene in an aqueous suspension at a temperature in the range from 100–110°C. as lower limit to 150°C. as the upper limit."

The references are:

Taylor          2,695,899 November 30, 1954.
Becker et al. 2,592,763 April 15, 1952.
Fotis et al.    2,829,136 April 1, 1958.

Taylor discloses the chlorination of polyethylene having a molecular weight of 18,000 to 20,000 in an aqueous suspension of 9 to 30 parts of water per part of polyethylene, at a temperature of 10° to 100°C., with temperatures about 100°C. where superatmospheric pressure is used. The polymer made by Taylor has a chlorine content of about 25% to 35%.

Becker discloses the chlorination of polyethylene at temperatures of about 60°C. to 150°C. under pressure. Products having up to 70% chlorine content are said to be obtained.

Fotis discloses a process for producing low pressure polyethylene "having molecular weights ranging upwardly from 300

or specific viscosities, as hereinafter defined, above about 1000." Throughout the specification Fotis refers to his polyethylene products as "high molecular weight, normally solid polymers." In describing the utility of his low pressure polyethylene products, Fotis mentions that they may be halogenated.

The board held that it would be obvious to substitute Fotis' low pressure polyethylene for the high pressure polyethylene chlorinated by Taylor and Becker. As to the temperature limitations the board said they were not critical. Klug had submitted two affidavits of Frey, which show that chlorination of the same low pressure polyethylene polymer at 70°C. and at 115–117°C. under otherwise identical conditions produces products of completely different physical properties.[2] Referring to those affidavits the board said:

" * * * The affidavit showings do not present anything more than what appellants disclosed in their specification as filed. Appellants disclose on page 4 of their specification that when operating the chlorination at a temperature ranging from 50 to 100 or 110°C., a hard powder of chlorinated polyethylene is obtained which consists mainly of crystallites and when operating at a temperature above 100–110°C., and not exceeding 150°C., products of different physical behavior, being flocculent to amorphous constituting of rubber-like to hard substances, are obtained. It is evident therefore that there is no criticality in the temperatures of operation to which the appealed claims are directed. It is simply a matter of what kind of products are desired to be obtained."

We are unable to agree with that reasoning for we cannot find any recognition in the cited art that different products may be obtained, of the same starting material, simply by varying the

2. Samples of the two products were submitted as exhibits before the board and this court. Klug's product is elastic and rubbery while the product obtained at lower temperatures is relatively inflexible and smooth. The products are different in appearance and physical properties.

temperature between two adjacent temperature ranges, namely, below about 100°C., and upwards of 100–110°C. Thus, absent Klug's own disclosure, it is not "simply a matter of what kind of products are desired."

We agree with the board and the solicitor that there is nothing unobvious in substituting low pressure polyethylene, e. g. disclosed by Fotis, for high pressure polyethylene in the processes of Taylor or Becker. In fact, reference to Fotis seems hardly necessary, since, for the purpose of our present decision, one may assume that the chlorination of low pressure high molecular weight polyethylene is described in the prior art. The difference then, between the prior art and the subject matter claimed, is the discovery of a critical limitation in the reaction temperatures employed in the prior art. That the recited temperature limitation is critical is evidenced by the fact that chlorination of the identical low pressure polyethylene under the same conditions except for the reaction temperatures, produces products having entirely different physical properties, albeit the same chemical structure.

We appreciate the solicitor's argument that chlorination of polyethylene is conventional but we think more is involved here than the mere substitution of one starting material for another. Klug has discovered that above and below a certain critical temperature, he can form different products from the same starting material under otherwise identical conditions, employing the standard chlorination procedure. The cited art is devoid of any disclosure from which that discovery by Klug can be held obvious.

■ With respect to product claim 48, we note that the board failed to mention it in either its original opinion or on reconsideration. The solicitor urges that the product is unpatentable because it is made by a conventional process. We dis-

agree. Whether a product is patentable depends on whether it is known in the art or it is obvious [3] and is not governed by whether the process by which it is made [4] is patentable.

■ The examiner, in his "Answer" before the board, said:

"* * * In addition, applicants' product does not distinguish over that of Becker et al and Taylor who both have a chlorination product of polyethylene having a molecular weight of 12,000 to 2,000,000, a *predominantly* linear structure, and being non crystalline. The article itself must be the product of invention even if claimed as one produced by a new process."

Although we agree that the patentability of a product is to be determined independently of the patentability of the process for making it, we cannot agree that either Taylor or Becker disclose the claimed product or that the substitution of Fotis' low pressure polyethylene in Taylor's process would inherently produce the claimed product. There is no indication that by raising the reaction temperature in Taylor's process an amorphous rubbery like product would be obtained in contrast with Taylor's stiff non-tacky products. Furthermore, Fotis' low pressure polyethylene is described as having a molecular weight of over 300. Although characterized by Fotis as a high molecular weight polymer, there is no indication that it has a molecular weight of 12,000 to 2,000,000. We cannot, therefore, find the chlorinated polyethylene of claim 48 to be disclosed in, or obvious from, the prior art of record.

Although the solicitor's arguments have created some doubt, we feel justified, on the facts here, in resolving that doubt in favor of appellants.

The decision of the board is reversed.

Reversed.

---

3. 35 U.S.C. §§ 102, 103.

4. It is important to recognize here that the claimed process' temperature limita-

tion is critical because it unexpectedly gives rise to *different* products. Whether those different products are themselves patentable is another matter.