55 CCPA

**Application of Herman HOEKSEMA.**
**Patent Appeal No. 7778.**

United States Court of Customs and Patent Appeals.
Aug. 8, 1968.

**270**

Earl C. Spaeth, Kalamazoo, Mich., (Eugene O. Retter, George T. Johannesen, Kalamazoo, Mich., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK [*], Judges.

SMITH, Judge.

In our prior consideration of this appeal, we affirmed the decision of the Patent Office Board of Appeals, which had affirmed the examiner's rejection of the sole remaining claim of appellant's application,[1] In re Hoeksema, 379 F.2d 1007, 54 CCPA 1618 (1967). Because of the continuing importance of the questions involved, and the strong suggestion of error in our earlier opinion, we granted appellant's petition for a rehearing under the provisions of Rule 7 of this court, 55 CCPA ——, (October 5, 1967).

The parties filed new briefs, and the case was reargued on January 3, 1968. Upon reconsideration of our previous decision, we have concluded that our previous decision was erroneous and that a proper resolution of the issues requires that we *reverse* the decision of the board.

The facts are set forth in our original opinion. We shall assume familiarity with that statement of facts and shall here redevelop only those which we now believe were previously misapprehended or misapplied and require the present decision.

The sole claim on appeal is directed to a chemical compound and reads as follows:

1. An N-psicofuranoside having the formula:

wherein A is selected from the class consisting of hydrogen, the group–XR wherein R is selected from the class consisting of hydrogen, lower-alkyl, and lower-aralkyl, and X is selected from the class consisting of oxygen

and sulfur, and the group $-N <{\ ^{R_2}_{R_3}}$

wherein $R_2$ is selected from the class consisting of hydrogen, lower-alkyl, lower-aralkyl, and lower-aryl, and $R_3$ is selected from the class consisting. of lower-alkyl, lower-aralkyl, and lower-aryl, and R' is selected from the class consisting of hydrogen, a hydrocarbon carboxylic acid acyl radical containing from two to twelve carbon atoms, inclusive, and a halo-, hydroxy-, lower-alkoxy-, amino-, cyano-, thiocyano-, and nitro-substituted hydrocarbon carboxylic acid acyl

and 6–Substituted Derivatives." Claims 2 and 11–25 stand allowed.

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Claim 1 in Serial No. 30,770, filed May 23, 1960, for "9–D–Psicofuranosylpurine

radical containing from two to twelve carbon atoms, inclusive.

That claim stands rejected under 35 U.S.C. § 103 as unpatentable over prior art, on this record limited solely to the De Boer et al. patent[2] (De Boer) which discloses a compound with the structural formula:

As we noted in our original opinion, the controversy here is limited to the substituent A at the 6-position of the purine ring system. Although a compound having De Boer's structure is not included in the appealed claim since A in the claim cannot be an unsubstituted or primary amino, $-N <{}^H_H$ , the basic structure of the De Boer compound is similar to the structure of appellant's alkylamino and dialkylamino compounds.[3]

Despite this close structural similarity between the De Boer amino compound and the alkylamino and dialkylamino compounds included in the appealed claim, appellant chose not to submit a showing of unexpected properties in his claimed compounds.[4] Appellant asserted that his compounds were unobvious and patentable without such a showing. He urged that De Boer does not teach one of ordinary skill in the art how to make appellant's claimed compounds, and the examiner did not cite any other reference telling how they might be made. Therefore, in appellant's view, his claimed compounds are not in possession of the public, In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964).[5]

In support of his position, appellant submitted an affidavit by Dr. Paul F. Wiley relating to the unavailability to the public of processes for preparing appellant's alkylamino and dialkylamino compounds.[6] Dr. Wiley's qualifications

---

2. Patent No. 3,094,460, issued June 18, 1963 on an application filed January 20, 1959.

3. Appellant, in effect, admits that there is such a "structural similarity" between his claimed compounds and the prior art compounds as to raise an "inference of fact" that they are not patentable within the meaning of 35 U.S.C. § 103. See In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963); In re Mills, 281 F.2d 218, 47 CCPA 1185 (1960).

4. Such a showing often has been treated by this court as overcoming a case of "prima facie obviousness" or the "inference of fact" that the compounds are obvious. See, e. g., In re Papesch, supra note 3 and cases cited therein.

5. For the applicability of In re Brown, supra, to other factual contexts, see In re Bird, 344 F.2d 979, 982, 52 CCPA 1290, 1294 (1965); In re Sheppard, 339 F.2d 238, 242, 52 CCPA 859, 864 (1964);

Dix-Seal Corp. v. New Haven Trap Rock Co., 236 F.Supp. 914, 921 (D.C.Conn. 1964).

6. After setting forth his qualifications and stating that he had read and understood both appellant's application and the prior art patent, Dr. Wiley stated:

THAT, 6-amino-9-D-psicofuranosylpurine is a systematic name for "psicofuranine" which is disclosed in column 6, lines 46–62 of the aforesaid patent;

THAT, according to the aforesaid patent, 6-amino-9-D-psicofuranosylpurine is produced by a fermentation process involving the action of a specific microorganism, S. hygroscopicus var. decoyinine, in certain aqueous nutrient media;

THAT, there is no indication in the aforesaid patent [De Boer] that the aforesaid fermentation process could be used to produce 6-lower-alkylamio - 9 - D - psicofuranosylpurines,

and competence as an expert to state facts and opinion in this area of chemistry were not challenged.

Regarding the Wiley affidavit, the examiner stated, in his Answer:

The affidavit * * * does not appear to be pertinent to the claim now on appeal because it is directed to the processes by which the De Boer et al. and appellant's compounds are prepared, and shows nothing unobvious for the instantly claimed compound.

Concerning the Wiley affidavit, the board cited a statement of this court in In re Riden, 318 F.2d 761, 50 CCPA 1411 (1963), to the effect that "the method of making the compounds is a relevant fact to be considered in the question of obviousness of the compounds," 318 F.2d at 764, 50 CCPA at 1415. But the board continued:

* * * This may be so but it is only one factor and, in our opinion, should never be the overriding one which appellant is here, in effect, urging.

Appellant states the first of two central questions to be decided in this rehearing as follows:

1) Appellant will admit his compounds are obvious and unpatentable *if* an obvious process is available to make them. Does it follow then that appellant's compounds are unobvious

and patentable if an obvious process is *not* available to make them?

Within this context, appellant simplifies that question to: Is process obviousness relevant in deciding compound obviousness? [7]

The solicitor responds to the latter characterization of the question in the affirmative, pointing out that the first question bears on the principle implicit in In re Brown, supra, that claimed compounds not distinguished in their properties over closely related prior art compounds are unpatentable thereover where the claimed compounds would be "in possession of the public" in that a process for preparing them would be obvious to those of ordinary skill in the art.

In addition, the solicitor now refers to our prior opinion in which we noted that the facts in this case are closely analogous to those of In re Riden, supra, where we stated that the fact that the method of making the claimed compound is relevant, 379 F.2d at 1010, 54 CCPA at ——.

A recurring problem of analysis which confronted us as we prepared our previous opinion, and which still confronts us after the rehearing, has its genesis in a proper understanding of the issue as framed by appellant. In effect, appellant agrees that since the claimed prod-

---

6 - di - lower - alkylamino - 9 - D - psicofuranosylpurines, or other 6-substituted - amino - 9 - D - psicofuranosylpurines;

THAT, he does not believe the aforesaid fermentation process could be adapted to the production of the aforesaid 6-lower-alkylamino-9-D-psicofuranosylpurines, 6-di-lower-alkylamino-9-D-psicofuranosylpurines, or other 6-substituted - amino - 9 - D - psicofuranosylpurines;

THAT, the aforesaid 6-amino-9-psicofuranosylpurine could not be transformed by direct chemical substitution of the 6-amino group to a 6 - lower - alkylamino 9 - D -psicofuranosylpurine, a 6-di-lower alkylamino-9-D-psicofuranosylpurine, or other 6-substituted - amino - 9 - D - psicofuranosylpurines, and that such trans-

formations could be carried out only by a complex multi-step procedure such as that described in the aforesaid patent application Serial No. 30,770. [Emphasis added.]

7. To this extent, appellant has misstated his argument. That process obviousness is relevant in this context is clear from In re Riden, supra. See also In re Chapman, 357 F.2d 418, 53 CCPA 978 (1966); In re Burt, 356 F.2d 115, 53 CCPA 929 (1966); In re Schechter, 205 F.2d 185, 40 CCPA 1009 (1963). We think appellant really means to say that the question is whether a claimed compound may be said to be legally obvious when no process for making that compound is shown in the prior art relied upon to establish legal obviousness under section 103.

uct is a homolog of a known compound, it would be prima facie "obvious" under 35 U.S.C. § 103. But this agreement is conditioned on the proviso that there is in the prior art an "obvious" process by which to make that compound.

In the context of section 103, we are not permitted to fragment a claimed invention in applying that section. The clear mandate of the statute which governs our analysis requires that we consider the *invention as a whole* in making the determination.

Thus, as we apply the statute to the present invention, we must ask first, what is the invention as a whole? Necessarily, by elementary patent law principles, it is the claimed compound, but, so considered, unless there is some known or obvious way to make the compound, the invention is nothing more than a mental concept expressed in chemical terms and formulae on a paper.

■ We are certain, however, that the invention as a whole is the claimed compound *and* a way to produce it, wherefore appellant's argument has substance. There has been no showing by the Patent Office in this record that the claimed compound can exist because there is no showing of a known or obvious way to manufacture it; hence, it seems to us that the "invention as a whole," which section 103 demands that we consider, is not obvious from the prior art of record.

■ While there are valid reasons based in public policy as to why this defect in the prior art precludes a finding of obviousness under section 103, In re Brown, supra, its immediate significance in the present inquiry is that it poses yet *another difference* between the claimed invention and the prior art which *must* be considered in the context of section 103. So considered, we think the differences between appellant's *invention as a whole* and the prior art are such that the claimed invention would not be obvious within the contemplation of 35 U.S.C. § 103.

While 35 U.S.C. § 102 is not *directly* involved in the issue on review, the conditions for patentability, novelty and loss of right to patent, there stated, may have relevance as to the disclosure which must be found in the prior art to find obviousness of an invention under section 103. In determining that quantum of prior art disclosure which is necessary to declare an applicant's invention "not novel" or "anticipated" within section 102, the stated test is whether a reference contains an "enabling disclosure," in the present context, a process by which the claimed compound could be made. In In re Le Grice, 301 F.2d 929, 49 CCPA 1124 (1962), we observed that the resolution of this issue required us to determine whether, *as a matter of law*, a reference without such a disclosure constituted a statutory time bar to an applicant's right to a patent. There, the issue was founded on 35 U.S.C. § 102(b), not § 103, but our conclusions have a certain pertinence here. We concluded, id. 301 F.2d at 936, 49 CCPA at 1134:

> We think it is sound law, consistent with the public policy underlying our patent law, that before any publication can amount to a statutory bar to the grant of a patent, its disclosure must be such that a skilled artisan could take its teachings in *combination with his own knowledge of the particular art and be in possession of the invention.* * * *

In In re Brown, supra, this court discussed In re Von Bramer, 127 F.2d 149, 29 CCPA 1018 (1942), commenting that that opinion should not be construed to encompass what had come to be called the "Von Bramer doctrine." There we stated, 329 F.2d at 1009, 51 CCPA at 1257:

> * * * This doctrine, which appears to have resulted from In re Von Bramer et al., supra, seems over a period of years to have been tailored in some quarters to a principle which defeats the novelty of a chemical compound on the basis of a mere printed conception or a mere printed contemplation of a

chemical "compound" *irrespective of the fact* that the so-called "compound" *described in the reference is not in existence or that there is no process shown in the reference for preparing the compound, or that there is no process known to a person having ordinary skill in the relevant art for preparing the compound.* In other words a mere formula or a mere sequence of letters which constitute the designation of a "compound," is considered adequate to show that a compound in an application before the Patent Office, which compound is designated by the same formula or the same sequence of letters, is old. We do not think that the *Von Bramer* case should be so construed. [Emphasis added.]

\*    \*    \*    \*    \*    \*

To the extent that anyone may draw an inference from the *Von Bramer* case that the *mere* printed conception or the *mere* printed contemplation which constitutes the designation of a "compound" is sufficient to show that such a compound is old, regardless of whether the compound is involved in a 35 U.S.C. § 102 or 35 U.S.C. § 103 rejection, we totally disagree. \*  \*  \* [Footnotes omitted.]

We concluded, relying on In re Le Grice, supra, and E. I. DuPont de Nemours & Co. v. Ladd, 117 U.S.App.D.C. 246, 328 F.2d 547 (1964), that the "true test of any prior art relied on to show or suggest that a chemical compound is old, is whether the prior art is such as to place the disclosed 'compound' in the *possession of the public.*" 329 F.2d at 1011, 51 CCPA at 1259.

While In re Le Grice was bottomed on an issue arising under 35 U.S.C. § 102 where the reference was a "printed publication," that test, in our view, is also properly applicable to issues arising under 35 U.S.C. § 103. See In re Brown, supra (pertinent portion quoted above); Deutsche Gold-Und Silber-Scheideanstalt v. Commissioner of Patents, 251 F.Supp. 624, 629–630 (D.D.C.1966), affirmed, 397 F.2d 656 (D.C.Cir. 1968).

■■ Thus, upon careful reconsideration it is our view that if the prior art of record fails to disclose or render obvious a method for making a claimed compound, at the time the invention was made, it may not be legally concluded that the compound itself is in the possession of the public.[8] In this context, we say that the absence of a known or obvious process for making the claimed compounds overcomes a presumption that the compounds are obvious, based on close relationships between their structures and those of prior art compounds.

The second aspect of the questions presented by this rehearing involves the issue of whether the burden is on the Patent Office to provide the evidence on which to predicate process obviousness.

35 U.S.C. § 101 states, in its preamble, that an applicant is *entitled* to a patent *unless* certain patent-defeating provisions are met. The substantive patent-defeating provisions are encompassed in 35 U.S.C. §§ 100–103.

As we have stated, the Patent Office search resulted in citation of the De Boer reference which, under the prevailing law, rendered appellant's claimed compounds *prima facie* obvious. In oth-

---

8. In Phillips Petroleum Co. v. Ladd, 219 F.Supp. 366 (D.D.C.1963), in considering a rejection arising under 35 U.S.C. § 102, the District Court agreed with this court that the mere naked statement of the invention does not put anyone in possession of the invention. That court was careful to note that no process had been shown in the reference for preparing the compound and that no process was known to one of ordinary skill in the art for preparing the compound.

In Ex parte Wall, 156 USPQ 95 (P.O. Bd.App.1964), the board considered a rejection under 35 U.S.C. § 102 of a claim reading "Perfluorostyrene." In reversing the examiner, the board commented that the examiner did not contend that the reference disclosed how perfluorostyrene is made, nor did he point to any extraneous evidence which would indicate that those skilled in the art knew how to make that compound.

er words, its citation shifted to appellant the burden of going forward with contrary evidence. Appellant filed the affidavit of Dr. Wiley which points out as a fact that De Boer—the only reference being relied on—does not disclose a process for producing the different compounds here claimed.

 We think that portion of the Wiley affidavit set forth, supra note 6, states facts which were legally sufficient to overcome the position of the Patent Office as to the legal effect under section 103 of the De Boer reference.[9] Appellant's responsibility to overcome this reference as a "patent-defeating" reference under section 103 at that point in the prosecution was only to overcome De Boer as a reference pertinent to the issue of obviousness under section 103.

We think the Wiley affidavit is clearly sufficient for this purpose. The affidavit points out that there is no indication in the De Boer patent that the fermentation process used to produce De Boer's compounds could be used to produce appellant's compounds. Since we are of the view that the method for making the compounds is an integral part of the "invention as a whole" which we must consider under section 103, we conclude that the burden of going forward with proofs to support its position as to obviousness of the claimed invention shifted to the Patent Office upon appellant's filing of the Wiley affidavit.

█ The failure of the Patent Office to produce such evidence requires that the decision of the board be reversed.

Reversed.

WORLEY, C. J., did not participate.

KIRKPATRICK, Judge (dissenting).

I am unable to agree with the result reached by the majority. The reasons for my dissent appear in the overrruled opinion In re Hoeksema, 379 F.2d 1007, 54 CCPA 1618 (1967).•

---

9. We think this approach to be eminently fair to all parties and in accord with the opinion of the Supreme Court in *Graham*, in its requiring that all of the pertinent evidence be considered while yet leaving the primary responsibility for sifting out unpatentable material with the Patent Office, Graham v. John Deere Co., 383 U.S. 1 at 18, 86 S.Ct. 684, 15 L.Ed.2d 545.

It would be practically impossible for an applicant to show that all known processes are incapable of producing the claimed compound.