56 CCPA

## Application of Daniel Edwin MALONEY.
### Patent Appeal No. 8150.
*United States Court of Customs and Patent Appeals.*

June 18, 1969.

James T. Corle, Washington, D. C., Earl L. Handley, Wilmington, Del., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents, Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, CLARK, Justice (Ret.), NEESE, Judge, sitting by designation, and ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection on prior art under 35 U.S.C. § 103 of claims 1, 5 and 6 in appellant's application[1] for "Modified Hydrocarbon Polymers."

The invention relates to a copolymer comprising at least 50 mol percent ethylene and at least 0.1–25 mol percent $\alpha,\beta$ ethylenically unsaturated carboxylic acid chloride having 3–8 carbon atoms, for example, methacrylyl chloride (MAC1). A third monomer may be included in the polymeric molecule. The copolymer is useful as an adhesive, as a molding and coating material, and in making

---

[1] Serial No. 254,567 filed January 29, 1963.

"limp wrapping film." Appellant makes the acid chloride copolymer by first preparing an ethylene-carboxylic acid copolymer according to a method "described in the literature, for example U. S. Patent No. 2,646,425, issued July 21, 1953 to Barry," and subsequently treating that copolymer with a suitable chlorinating agent, such as thionyl chloride or phosphorous pentachloride, to replace the –OH moiety of the acid with chlorine. Claim 1 is representative:

1. Copolymer comprising (1) ethylene units having the formula —CH$_2$ —CH$_2$ — and (2) alpha, beta ethylenically unsaturated carboxylic acid chloride units having 3 to 8 carbon atoms, said alpha olefin units [2] being present in said copolymer in the amount of at least 50 mol percent based upon the total mols of units polymerized to form this copolymer, said alpha, beta ethylenically unsaturated carboxylic acid halide units being present in said copolymer to the extent of at least 0.1 to 25 mol percent based on the total number of mols of units polymerized to form the copolymer, said copolymer having a melt index as measured by ASTM–D–1238–57T of between 0.1 and 1000 gr/10 min.

The references are:

| | | |
|---|---|---|
| Howk et al. (Howk) | 2,440,090 | April 20, 1948 |
| Barry | 2,646,425 | July 21, 1953 |

Howk, the principal reference employed by the examiner, discloses that "[p]rior art polymeric acid halides, derived from monomeric unsaturated acid chlorides, e. g. methacrylyl chloride, have the disadvantage of poor stability." To solve that problem, Howk polymerizes certain ethylenically unsaturated carboxylic acid *flourides*, such as methacrylyl (MAF), either alone or with another "polymerizable compound which contains at least one ethylenic linkage." Among the latter monomers, Howk mentions "ethylene." The resultant polymers and copolymers, Howk says, have "superior stability," and may be useful as "transparent wrapping materials" and as molding materials. Howk generally describes the processes he utilizes to prepare his polymers:

In conducting the process of polymerization of an alpha-methylene carboxylic acid flouride, either in the absence of or with another polymerizable compound, the bulk and solution processes are preferred. The catalyst concentration is within the range of from 0.1% to 2% based upon the total weight of monomers used. The most effective temperatures lie within the range of from 30° C. to 60° C. since these give high molecular weight products at relatively rapid rates. *Greater polymerization speeds are obtainable at higher temperatures but usually with some sacrifice in the molecular weight.* It is usually advantageous to displace the air in the systems and in the free space above the mixtures with an inert atmosphere such as nitrogen or carbon dioxide. In the solution process, the ration of monomers to solvent can be varied in accordance with the principle *that higher dilutions* result in slower rates and *produce lower molecular weight polymers.* [Emphasis added.]

In an example illustrative of the solution polymerization process, Howk dissolves 40 parts vinyl chloride, 10 parts MAF and 0.1 part benzoyl peroxide (catalyst) in 50 parts petroleum ether solvent, and heats the solution in a closed container "for several days."

2. The board said, and appellant agrees: We note that "said alpha olefin units" in claim 1 has no antecedent in terms in this claim. It apparently is intended to refer to the "ethylene units" and we will so consider it.

Said the examiner:

Claims 1, 5 and 6 stand rejected under 35 U.S.C. 103 as unpatentable over Howk et al. Howk et al. teach copolymers of acrylyl flouride with one or more ethylenically unsaturated compounds * * * such as ethylene and isobutylene * * *. The polymers are solid; contain at least 5 weight per cent of the acid flouride and have improved properties over the polymers from the corresponding acid chlorides. This disclosure is seen to meet the essential limitations of the instant claims —it being obvious to substitute the acid chloride for the acid fluoride of the reference if one were willing to sacrifice heat stability.

The board agreed.

Here appellant argues that Howk does not suggest a copolymer of ethylene and MAC1. We do not agree. It seems to us, as it did to the examiner and board, that appellant's claimed ethylene/acid chloride copolymers are prima facie obvious to one of ordinary skill in the art from a consideration of Howk, who discloses both MAC1 and MAF—indeed, makes his MAF from MAC1—and further discloses the copolymerization of MAF with other ethylenically unsaturated monomers such as ethylene itself. We find no error in the conclusion of the examiner and board that a copolymer of MAC1 and ethylene is also suggested to one of ordinary skill in the art. There remains for consideration, then, appellant's position that the Patent Office has failed to establish that one of ordinary skill in this art would know how to prepare the claimed ethylene/acid chloride copolymers.

We agree with appellant that claims to compositions of matter may be separately patentable whether or not process claims drawn to the method of making those compositions are patentable. In re Klug, 333 F.2d 905, 51 CCPA 1529; In re Larsen, 292 F.2d 531, 49 CCPA 711. At the same time, however, it must be noted that the presence—or absence—of a suitably operative, obvious process for making a composition of matter may have an ultimate bearing on whether that composition is obvious—or nonobvious—under 35 U.S.C. § 103. In re Riden, 318 F.2d 761, 50 CCPA 1411; In re Burt, 356 F.2d 115, 53 CCPA 929; In re Hoeksema, 399 F.2d 269, 55 CCPA 1493. At oral argument, appellant's counsel regarded the latter decision as dispositive of the present appeal in his favor.

In contrast to Hoeksema, however, where the record contained "no showing of a known or obvious way to manufacture" the compounds there claimed, the examiner here has taken up the burden of proof imposed by Hoeksema and has in effect found that there are three obvious, available processes for preparing the present compositions. The first process relied on by the examiner is the very process Howk generally describes as suitable for preparing the analogous copolymers of an ethylenically unsaturated monomer and acid fluoride. The second process is one disclosed by Barry,[3] the patent appellant relies on

3. A considerable amount of controversy has developed as to the exact status of the Barry patent as a reference in the case. The examiner initially cited Barry "of interest" for his disclosure "that ethylene will polymerize with the acid halides of mono and dicarboxylic acids." Barry states:

* * * it is known that ethylene can be copolymerized with a variety of unsaturated compounds such as * * * acrylic, methacrylic [acids] * * * as well as their derivatives such as * * * acid halides * * *. * * * All of these reactions * * * can be conducted in accord with the invention.

In a subsequent letter to appellant, the examiner again advised "that the Barry reference, cited as of interest in the first action, is maintained to show that ethylene will polymerize with the acid halides" of monocarboxylic acids. In his Answer, the examiner again cited Barry as "of interest," and countered appellant's argu-

in his specification for a description of how to prepare an ethylene/carboxylic acid copolymer. The third is the process appellant himself employs to make the claimed copolymers.[4]

ment that one of ordinary skill would be unaware of how to produce a high molecular weight ethylene/MAC1 copolymer with the statement:

> It is the Examiner's position that the Barry process could be employed to prepare the copolymers of the instant claims even if the Howk et al. process were inoperable.

Appellant filed a reply brief, noting that the examiner "relies upon an additional reference not employed in the final rejection, thus requiring comment," and simply argued that Barry neither explicitly mentions the use of ethylene and an acid chloride nor exemplifies specific, as opposed to general, conditions for producing ethylene/acid halide copolymers.

The board agreed with the examiner's use of Barry, noting that the reference discloses the reaction of ethylene with other monomers containing a carboxylic acid moiety, which disclosure appellant relies on in his specification, "in exactly the same manner" as it discloses the reaction of ethylene with a monomer containing an acid halide moiety. On reconsideration the board denied making a new ground of rejection on Barry and refused to consider a newly filed affidavit of Armitage said to show that the Barry process is also inoperative to produce an ethylene/acid chloride copolymer.

Here appellant argues that the board's treatment of Barry did not afford him an opportunity "to submit *and have considered* such showings of facts and arguments as he considers appropriate" and asks that we consider the Armitage affidavit.

It seems to us that the board relied on Barry for no different purpose than did the examiner thrice earlier—namely, as evidence that a process of preparing the claimed copolymers was available to the art. We think that appellant had ample opportunity, prior to the decision of the board, to place in the record any evidence he thought pertinent to the applicability of Barry. We will not consider the Armitage affidavit here. In re Harris, 324 F. 2d 316, 51 CCPA 786.

With respect to the applicability of Howk's process, our main concern here, appellant does not deny that *a* copolymer of ethylene and MAC1 can be prepared using the process conditions disclosed by

4. In his application as originally filed, appellant presented six process claims corresponding in general to his disclosed process as outlined earlier in this opinion. The examiner regarded that process to be analogous to a process disclosed by a reference to Hall, which is not in the record before us, stating:

> Hall et al. teach a process wherein acid OH groups of a polymer are converted to halogen with thionyl chloride * * *. The record shows that appellant acknowledged that Hall "does disclose the conversion of acid OH groups to halogen groups with thionyl chloride" but argued that "the polymer employed by Hall et al is not an ethylene polymer." The examiner was not persuaded by appellant's arguments, stating:

> The reaction disclosed by Hall et al occurs independently of the polymer backbone, i.e. is dependent primarily upon the presence of the acid —OH group.

Subsequently appellant canceled his process claims from the application, a factor no doubt partially accounting for the absence of the Hall reference from the present record. But the examiner pursued his conclusion that there was an obvious and known process for preparing the present copolymers. In his Answer he stated:
* * * it should be noted, that the process claims set forth in the instant application as originally filed have been cancelled. It is the Examiner's position, that it would also be obvious to use such a process for the preparation of the polymers of the appealed claims.

In view of that prosecution history, we cannot agree with appellant's argument here that the examiner was using appellant's own process disclosure as prior art against him. Rather, it would appear the examiner was merely taking cognizance of the fact that a person of ordinary skill in the art would be generally aware that high molecular weight polymers containing acid chloride groups could be obtained by reacting known high molecular weight polymers containing carboxylic acid groups, such as those of Barry, with a suitable chlorinating agent.

Howk. Rather he contends that certain data he presents in a Rule 132 affidavit[5] "establishes the Howk et al. process is inoperative to produce appellant's claimed compositions," namely those having a relatively *high molecular weight* as represented by the claimed melt index values of 0.1 to 1000.

The examiner and board criticized the sufficiency of the data in appellant's affidavit in several respects. The examiner noted, for example, that appellant selected only the highest temperature within the 30°–60° C. temperature range disclosed by Howk in his attempt to produce a high molecular weight MAC1/ethylene copolymer. But, as Howk seems to suggest, a higher temperature favors the rate of reaction "with some sacrifice in molecular weight." Appellant has given no reason why a lower temperature—30° C., for example—in Howk's disclosed range was not selected, nor explained why that lower temperature would not be expected to give a higher molecular weight copolymer in the present circumstances in the face of Howk's teaching. We must agree with the Patent Office that appellant's affidavit is not convincing that Howk's process conditions could not be utilized to prepare the claimed copolymers.

Inasmuch as appellant has not satisfied us that the subject matter as a whole is unobvious, the decision of the board is affirmed.

Affirmed.

---

5. There appellant averred that he "attempted to produce high molecular weight ethylene/methacrylyl chloride copolymers and ethylene/methacrylyl fluoride copolymers, using the technique disclosed in the Howk et al Patent 2,440,090." To that end, he conducted five experiments where he dissolved 0.1–0.2 grams catalyst and 0.5 to 3.0 grams MAC1 in a total of 60 milliliters benzene, and placed the solution under 2000 atmospheres ethylene pressure in a reaction vessel. Polymerization was carried out at *60°C.* for 7 hours. Although a copolymer was obtained, no copolymer was produced having a melt index less than 2500. Under similar conditions, appellant also polymerized ethylene and MAF, obtaining a copolymer having a melt index of 25. (As appellant's counsel explained at oral argument, lower melt index values represent higher molecular weights.) Appellant concluded in his affidavit:

> That I know of no process or conditions which would yield a high molecular weight (melt index of less than 1000) copolymer of ethylene/methacrylyl chloride by direct copolymerization of the monomers.