56 CCPA

**Application of Roger F. JONES.**

**Patent Appeal No. 8099.**

United States Court of Customs and Patent Appeals.

July 3, 1969.

Roger V. N. Powelson, Donald R. Johnson, Philadelphia, attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, Joseph F. Nakamura, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, and BALDWIN, Associate Judges.

BALDWIN, Judge.

Jones appeals from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 1 and 2, the only remaining claims in his application,[1] as unpatentable over Ward,[2] Blake,[3] and Orzechowski,[4] taken in combination, under 35 U.S.C. § 103.[5]

## THE INVENTION

The invention relates to blends containing polypropylene and anthophyllite asbestos.[6] The specification indicates

1. Serial No. 123,096, filed July 11, 1961, for "Filled Polypropylene."

2. U. S. Patent 2,835,107, issued May 20, 1958.

3. U. S. Patent 2,993,799, issued July 25, 1961, on an application filed August 20, 1957.

4. U. S. Patent 3,166,542, issued January 19, 1965, on an application filed February 3, 1961.

5. In his brief, appellant has urged that "[i]n the latter part of its opinion the Board of Appeals is apparently rejecting the claims as not being supported by suf-

ficient disclosure." We do not consider that the board was postulating a new ground of rejection under Rule 196(b) but rather was only commenting on the adequacy of the showing of unexpected results.

6. Asbestos is the generic name given to a group of naturally-occurring, fibrous magnesium silicate minerals. There are two basic types: serpentine or long-fiber asbestos (chrysotile), and amphibole or short-fiber asbestos (tremolite, actinolite, amosite, crocidolite and anthophyllite). The latter type combine various amounts of iron, calcium and sodium silicates with

that articles molded from asbestos-filled polypropylene generally "exhibit enhanced tensile and flexural modulus"; however, under certain circumstances, specifically where the articles are to sustain prolonged exposure to moderately high heat,[7] the asbestos-filled compositions tend to oxidize and degrade more rapidly than unfilled polypropylene. Appellant has discovered that *anthophyllite* asbestos accelerates the oxidative degradation to a far lesser extent than do other asbestos.

The appealed claims read:

1. As a new composition of matter, a blend of crystalline polypropylene and anthophyllite asbestos, wherein the weight percent of asbestos is from 10% to 85%, together with a small but effective amount of an inhibitor against thermal and oxidative degradation.

2. The composition according to Claim 1 in which the weight percent asbestos is from 30% to 60%.

## THE REFERENCES

Ward discloses compositions of asbestos with thermosetting resins, a number of which are listed as being applicable, and all types of asbestos are disclosed as acceptable. The preferred composition, however, comprises phenol-formaldehyde condensation resin with *anthophyllite* asbestos which has been chemically treated to eliminate acid soluble metallic constituents. The compositions are intended for use in extremely high temperature situations such as are encountered by rockets.[8] The compositions may be molded for use as an insulating liner or as part of the structure of the rocket tube itself.

Blake discloses lightweight, fireproof construction materials consisting of asbestos, another filler (which is inert) and a plasticizer mixed with a resinous plastic, which may be either thermosetting or thermoplastic. The asbestos comprises "about 15%" of the mixture, is not defined more specifically, but is said to give "to the product its character," one element of which is increased tensile strength. Polyethylene was specifically tested as one component of the mixture.

Orzechowski is directed to a process for producing highly crystalline polyolefins, among which are polyethylene and *polypropylene*. The patent discloses that the crystalline polymers so produced "can be subjected to such aftertreatment as may be desired to fit them for particular uses or to impart desired properties," for example, the incorporation of antioxidants, stabilizers, plasticizers, pigments, and fillers, such as the silicas.

In addition to the references employed in the rejection, the record includes page 113 of the Condensed Chemical Dictionary,[9] originally cited by the examiner but discarded prior to his final action, and page 136 of the Kirk-Othmer Encyclopedia of Chemical Technology,[10] originally

---

the magnesium silicate. They are said to be generally brittle and cannot be spun, as can chrysotile, but are more resistant to chemicals and heat. Condensed Chemical Dictionary 113 (6th ed.1961).

7. 280° and 310° F. are the only two temperatures mentioned in the specification. The intended use for the compositions may be "under the hood of an automobile in distributor caps, for example."

8. Part of the difficulty with this case arises from the examiner's use of Ward to show that *anthophyllite* asbestos has been preferred before in "heat resistant" applications. The "heat resistance" contemplated by Ward refers to the ability to withstand extremely high temperatures (in the order of 4000° F.) but only for short periods of time, while appellant's use of the term comprehends continuous exposure to heat at only moderate levels but for considerably extended periods of time. Considered in this respect, Ward does not suggest appellant's "heat resistance." We feel, however, that the reference remains pertinent as an indication that the art is aware of the varying properties of the different forms of asbestos from which the determination of the preferred form may be obvious. This position is fortified by the disclosures of two additional publications also included in the record.

9. New York, Reinhold (6th ed.1961).

10. New York, Interscience (Vol. 2, 1948).

called to the examiner's attention by appellant and relied on in his brief here as support for certain arguments.

## THE REJECTION

The board viewed the examiner's position as follows:

* * * [S]ince the anthophyllite type has been used as the preferred form of asbestos to fill thermosetting resins for high temperature applications, such as rocket liners, as shown by Ward, and since asbestos generally has been used to fill both thermosetting and thermoplastic resins for a variety of uses, including insulation, it would have been obvious under 35 USC 103 to use the anthophyllite variety of asbestos as the filler in the thermoplastic resins, such as the well-known filled crystalline polypropylene as shown by Orzechowski. The latter is also relied upon to show the use of antioxidants and stabilizers broadly, as claimed, in the resin.

The Blake patent was not mentioned in this statement, but since that patent was relied upon by the examiner to show that it was known to employ asbestos as a filler with thermoplastic or thermosetting resins to produce materials having improved tensile strength, we presume that it was also relied upon by the board.

The board apparently considered that the combined references did present a *prima facie* case of obviousness, since the examiner's position was sustained without going into the disclosures of the references in detail. The thrust of the opinion was clearly aimed at evaluating the adequacy of the showing of unobvious results. The board determined first that the showing in the specification of improved tensile and flexural modulus was insufficient since there was no comparison of the effects of the different types of asbestos.[11] Appellant's use of the term "catalyze" to describe the effect of the asbestos in increasing the rate of degradation was then seized upon and combined with Ward's disclosure that he treated the anthophyllite to remove acid soluble constituents, to justify the conclusion that "some sort of chemical interaction between the asbestos and polypropylene" occurs. Using this conclusion, the board then determined that the showing in Table II of the specification, which did compare the different types of asbestos as to their effect on the rate of heat degradation in blends with polypropylene, was insufficient because the types of asbestos were not adequately identified with regard to their chemical makeup, reasoning that:

[W]e find no identification of the various types of asbestos tested in Table II beyond their general name and the country, state or province in which they are found. It does not appear whether they were used as they naturally occur or whether they were subjected to some form of further selection or chemical treatment such as in Ward.

It is well-known, as indicated by Ward, that asbestos is an impure silicate as it occurs in nature. It is also well-known that it varies in this and many other respects such as physical structure, strength and resistance to heat and to acids and that these differences occur even among various representatives of a particular type. Selection for general uses often is made on the basis of general type characteristics. However, where, as here, chemical interaction is indicated, we do not think that one of ordinary skill in the art would accept the general "Type Asbestos" designation along with general localities of oc-

11. Table I on page 4 of appellant's specification is a comparison of the structural properties of anthophyllite asbestos filled polypropylene with unfilled polypropylene. It contains no comparative showing as to other types of asbestos. Appellant states in his brief, however, that this table was placed in the specification only to show utility and "no claim was ever made in the prosecution of the case that the improvement in tensile and flexural modulus was in any way unexpected."

currence as in Table II as sufficiently identifying the materials compared to warrant the claim of unobvious results as to every asbestos of the anthophyllite type, regardless of the factors we have discussed above, and even regardless of the places in which they occur.

Having concluded that any showing of unobvious results was insufficient, the board affirmed the examiner's rejection.

## OPINION

We agree, albeit for slightly different reasons, that the combined disclosures of the references make out a *prima facie* case that appellant's invention is obvious and that appellant has failed to present sufficient evidence to rebut the *prima facie* case. Cf. In re Hoeksema, 399 F. 2d 269, 55 CCPA 1493 (1968).

As pointed out by appellant and confirmed by Orzechowski, crystalline polypropylene has outstanding molding characteristics; but, primarily because it is a *thermoplastic* resin, it lacks adequate stiffness when subjected to elevated temperatures, coupled with mechanical or vibrational stress. We feel that the art of record, in particular Orzechowski and Blake, would lead one skilled in the art to expect that the structural and flexural strength, as well as the heat distortion temperature, of molded polypropylene articles would be improved by the addition of asbestos as a filler for the polypropylene.

The record indicates that there are six different types of asbestos. As the board indicated and the technical literature of record shows, the chemical and physical nature of the different types varies. Thus, while all are mineral fibers and would have the general effect as a filler of improving structural properties of a resin, it is reasonable to expect that under certain circumstances, subsidiary or side-effects, due to the varying chemical nature of the different species, perhaps, are likely to occur. This is suggested by Ward which, while indicating that all types of asbestos are suitable, clearly expresses a preference for a specific type (which happens to be *anthophyllite*). Here, the prior art suggests the combination generally for the primary purpose (*i.e.*, improved structural rigidity) for which it was made. Still further, the specific combination claimed was made from *only a limited number of choices* within the generic class suggested, and the prior art also suggested that certain members of the class have been preferred before for one reason or another, secondary to the principal purpose for making the combination. Moreover, the choice actually made is not based on its effect for the primary purpose for making the combination (*i.e.*, enhancement of structural properties, such as rigidity) but on some subsidiary purpose governed by secondary properties. On this record, we feel that the selection of the preferred species would have been obvious to one skilled in the art particularly since the secondary properties were known or, if not known, could be determined by routine experimentation *with a very limited number of species*. Applying these principles to this case, we consider that the tests producing the comparative data shown by appellant and the choice of *anthophyllite* asbestos as the preferred filler, determined by its substantially less serious effect on the degradation of the plastic, would have been obvious to one having ordinary skill in the art.

Finally, there remains to be discussed the affidavit submitted by appellant as evidence of commercial success of the claimed compositions. The affidavit lists sales figures for the years 1961–1965 on a product marketed under the tradename "Oleform." We feel the affidavit is generally deficient but is specifically of little probative value since it fails to indicate how much of the evident commercial success resulted exclusively from the particular composition of the claims and how much was due to other factors. There is also no indication that the sales figures represent the quantity of

articles sold for use in the specific high temperature environments contemplated by the invention.

The board's decision is affirmed.

Affirmed.