51 CCPA

**Application of Eric D. BROWN.**

**Patent Appeal No. 7193.**

United States Court of Customs and Patent Appeals.
April 9, 1964.
Rehearing Denied June 2, 1964.

Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa. (Fulton B. Flick, Pittsburgh, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the examiner's rejection of claims 1, 3 and 5 to 8 of appellant's application serial No. 594,113, filed June 27, 1956 for LOW SWELL, HIGH TEMPARATURE ORGANOSILOXANE RUBBERS.

Appellant's invention relates to organosilicon elastomers "which provide a minimum swell when in contact with automotive fuels, lubricating oils and the like." Those elastomers, which are said to have tensile strengths of at least 555 p. s. i. and elongations at break of at least 100%, comprise (1) a homopolymer of a perfluoroalkyl siloxane or a copolymer[1] thereof with a siloxane having units of the formula $R'_2SiO$, wherein $R'$ may be methyl, phenyl or vinyl and (2) a filler such as titania, zinc oxide, clay or crushed quartz. The invention also relates to the unvulcanized compositions which contain, in addition to polymer (1) and filler (2), from .1 to 10 per cent by weight based on the polymer of an organic peroxide vulcanizing agent.

The following claims are representative of the appealed claims:

"1. A siloxane elastomer having a tensile strength of at least 500 p. s. i. and an elongation at break of at least 100% which comprises (1) a polysiloxane in which essentially all of the units have the formula $RCH_2CH_2SiO$ with Me above, where R is a perfluoroalkyl radical of from 1 to 10 inclusive carbon atoms, said siloxane containing up to 10 mol per cent copolymerized siloxane units of the formula $R'_2SiO$ where $R'$ is selected from the group consisting of methyl, phenyl and vinyl radicals and (2) a filler."

"3. A vulcanizable composition of matter comprising (1) a polysiloxane in which essentially all of the units are of the formula $RCH_2CH_2SiO$ with Me above, where R is a perfluoroalkyl radical of from 1 to 10 inclusive carbon atoms, said siloxane containing up to 10 mol per cent copolymerized siloxane units of the formula $R'_2SiO$ where $R'$ is selected from the group consisting of methyl, phenyl and vinyl radicals, (2) a filler and (3) from .1 to 10 per cent by weight based on the weight of the siloxane of an organic peroxide."

Claim 1 is generic to cured or vulcanized homopolymeric elastomers as well as to the cured copolymeric elastomers. Claim 3 is similarly generic to the unvulcanized compositions. In the compositions of claims 5 to 8 a homopolymer of a perfluoroalkylsiloxane, within the scope of appealed claims 1 and 3, is recited. Four claims have been allowed.[2]

The reference relied on is:

---

[1]. Webster's Third New International Dictionary indicates that a "homopolymer" is a polymer containing only units of one single monomer while a "copolymer" is a polymer containing units of two or more different monomers.

[2]. In the allowed claims the polymeric material is *limited* to a copolymeric siloxane in which not more than 10 mol per cent of $R'_2SiO$ units are present. The board, in allowing such claims, stated "Appellant argues, and the argument appears to be supported by the specification as filed, that the claimed proportions of monomers result in a copolymer having a relatively low swelling characteristic."

Clark, Jr., Wright Air Development Agency (WADC) Technical Report 54–213, Dec. 7, 1954

The Clark reference discloses elastomeric compositions comprising an organosilicon elastomer, a filler and an organic peroxide vulcanizing agent. Clark's organosilicon elastomers are copolymers of a perfluoroalkylsiloxane. Those copolymers all "exhibited improved resistance to the swelling action by fuels and retained other desirable physical properties when compared to methyl silicone rubber." In discussing the organosilicon elastomers applicable, Clark states that "Attempts to prepare fluorine-containing silicone homopolymers have been unsuccessful."

The examiner rejected claims 1, 3 and 5 to 8, all of which are generic to or call for a homopolymer of a perfluoroalkylsiloxane, as unpatentable over the Clark reference. Referring to Clark's unsuccessful attempts to produce an elastomeric homopolymer of a perfluoroalkylsiloxane, the examiner viewed this teaching "as constituting a conception of the broad idea of an elastomeric homopolymer, within the scope of the language of the appealed claims" and as satisfying "the requirements" of In re Von Bramer et al., 127 F.2d 149, 29 CCPA 1018, in that the Clark reference "suggested" a homopolymer within the scope of the language of the appealed claims. Since the examiner considered that if any "invention" resides in the materials claimed, "such exists solely because of the specific polysiloxane [siloxane elastomer] employed since all the other ingredients as herein used [in the claims] are notoriously well-known in this art," he concluded that the appealed claims do not define a patentable invention over Clark.

The examiner also rejected a contention by appellant that the Clark reference is not "a printed publication within the meaning of 35 U.S.C. 102(b)." The examiner stated that the Clark reference, *"unrestrictively distributed more than one year* prior to the filing of the present application, to one hundred and eleven *unrestricted* different parties and/or or-

ganizations, is a publication under 35 U.S.C. 102(b)."

The board, in affirming the examiner's rejection of the appealed claims on the Clark reference, stated:

"* * * While Clark indicates * * * that the process of homopolymerizing was not successful, we agree with the Examiner that the concept of a homopolymer of 3,3,4,4,-5,5,5-heptafluoropentyl methyl diethoxysilane is clearly disclosed. We concur in the Examiner's view that the addition of a filler and vulcanizing agent to a homopolymer would be *obvious* from the disclosure * * * of Clark of making similar additions to copolymers." [Emphasis ours.]

The board further agreed with the examiner that the distribution of one hundred and eleven copies of the Clark reference "constituted publication within the terms of 35 U.S.C. 102(b)."

Appellant argues that Clark's discussion of homopolymers is "at most an inchoate idea (since he could not make them) that is as remote as can be from putting the public in possession of Brown's [appellant's] invention." Appellant urges that the position of the Patent Office that it was obvious to compound appellant's homopolymers with the filler and vulcanizing agent overlooks the fact that appellant's homopolymers were novel and not obvious.

Appellant further argues that the Patent Office erred in treating the Clark reference as a printed publication under 35 U.S.C. 102(b) since it was not "legally available as a reference."

If it be assumed arguendo that the Clark reference is legally available as a reference, the remaining question is whether the appealed claims are obvious under 35 U.S.C. § 103 in view of the Clark reference. Of course, if the answer to that question is in the negative, the issue as to whether the Clark reference is legally available as a reference becomes moot.

The crux of the examiner's rejection of the appealed claims is based on Clark's

unsuccessful attempts to produce an elastomeric homopolymer within the scope of the language of the appealed claims. The examiner, relying on the Von Bramer case, viewed that teaching as suggesting an elastomeric homopolymer within the scope of the language of the appealed claims.

Apparently we are, in this case, in the field of what has come to be called the "Von Bramer doctrine." [3] This doctrine, which appears to have resulted from In re Von Bramer et al., supra, seems over a period of years to have been tailored in some quarters to a principle which defeats the novelty of a chemical compound on the basis of a mere printed conception or a mere printed contemplation of a chemical "compound" irrespective of the fact that the so-called "compound" described in the reference is not in existence or that there is no process shown in the reference for preparing the compound, or that there is no process known to a person having ordinary skill in the relevant art for preparing the compound. In other words, a mere formula or a mere sequence of letters which constitute the designation of a "compound," is considered adequate to show that a compound in an application before the Patent Office, which compound is designated by the same formula or the same sequence of letters, is old. We do not think that the Von Bramer case should be so construed.

In Von Bramer, the application on appeal was directed to a motor fuel such as "cracked" gasoline stabilized against deterioration by the addition of an "N–(primaryalkyl)–aminophenol." The rejected claims were directed to a motor fuel containing, in an amount sufficient to substantially retard the deterioration, the N–(primaryalkyl)–aminophenol in which the primaryalkyl group contained

at least five carbon atoms. Among the references on which the appealed claims were rejected were four patents, viz. a Clifford patent, an Atwell patent, a Gutzeit patent and a Wilson patent, all of which taught the use of aminophenolic compounds as gasoline stabilizers. Particular emphasis was placed by the Patent Office on the Clifford patent which specifically related to the retardation of the ageing of deteriorable organic compositions among which was gasoline. Clifford stated that by the use of certain antioxidants the formation of gums and gummy materials was prevented. Among the antioxidants specified by Clifford were N–butyl–p–aminophenol,[4] N–isobutyl–p–amino–phenol and N–isoamyl–p–aminophenol. A method of preparing N–butyl–p–aminophenol was set out in the Clifford patent as "reacting butyl amine and p-chlorophenol in an autoclave." The appellants submitted an affidavit which purported to repeat Clifford's method of preparing the N–butyl–p–aminophenol. The examiner found that the effect of the affidavit was that the affiant could not prepare the N–butyl–p–aminophenol by the detailed method which affiant considered Clifford suggested for preparing such an aminophenol, and stated that the appellants, although they had disregarded other suggested methods for preparing aminophenols as shown by other cited patents such as the Wilson and Gutzeit patents, had deemed the affidavit adequate to establish that "none of the N primary alkyl amino phenols claimed" by appellants were available to the patentees despite the patentees' suggestion to use the same as gasoline gum inhibitors.

Appellants in the Von Bramer case contended that the prior art disclosed their claimed inhibitor by nothing more than a chemical name for a then alleged unknown aminophenol and that such a

---

3. In this connection, see Levy, "Von Bramer, A Plea for Reorientation" 33 J.P.O.S. 401–427 (1951).

4. Although the appellants' claims were restricted to a N-(primaryalkyl)-aminophenol in which the primaryalkyl group contained at least *five* carbon atoms while

the Clifford patent showed a N-(primaryalkyl)-aminophenol, viz. N-butyl-p-aminophenol, in which the primaryalkyl group contained *four* carbon atoms, the court considered the record to show that such a difference was one of degree only and did not of itself lend patentability to appellants' claims.

disclosure of a claimed compound, no further than by the customary chemical nomenclature, was insufficient to anticipate appellants' claims. This court in disposing of appellants' contentions adopted the language of the examiner in one of his letters, in which he stated:

> *"Applicants' argument that a name without further description given to a substance fails to identify or classify it and therefore fails to add to the prior knowledge in any way, is often true.* In the present instance a chemical compound is named by the Clifford patent, butyl amino phenol, which, while proposed to be used as a gasoline stabilizer as applicants would use it, is, according to applicants, merely a name and not a real anticipation of the very stabilizer substance applicants would use notwithstanding applicants name their stabilizer substance with the same words. This contention is predicated in the failure of applicants to prepare this N–butyl [N–butyl] amino phenol by a process described by the patentee.

> *"The fallacy in applicants' argument lies in the fact that the N–butyl amino phenol mentioned by the patentee is more than a mere name of an individual substance, otherwise unrecognized. This is a name according to a standard system of chemical nomenclature (Geneva system) whereby a chemically individual substance of definite chemical molecular structure is defined having generally predictable properties such as found for any similar N–alkyl amino phenol, and generally capable of synthesis by the recognized classical organic reactions.* The use of a name falling within the standard chemical system by the patentee is no accident because all of the many compounds named in Clifford's disclosure are deliberately named from this standard chemical system.

> "Thus it is apparent that Clifford proposes to use N–butyl amino phenol as a gasoline stabilizer and as such anticipates applicants' claims, and this is true whether Clifford never really prepared or tried this suggested stabilizer, or what he really used was something totally different, because the suggestion to use this substance as claimed is clear—even if the patentee was only guessing the effect is the same. \* \* \*" [Emphasis ours.].

The court then concluded that it was not necessary that a reference patent for a chemical compound disclose an operative process for producing the compound and affirmed the examiner's rejection on the cited art.

Thus, although this court in the Von Bramer case agreed with the examiner that it is true that a name without further description given to a substance often fails to add to the prior knowledge in any way, it considered that the Clifford patent presented *more* than a *mere* name of an individual substance otherwise unrecognized. It found Clifford's disclosure a teaching of a definite chemical molecular structure having generally predictable properties "such as found for any similar N–alkyl amino phenol, and generally capable of synthesis by the recognized classical organic reactions."

To the extent that anyone may draw an inference from the Von Bramer case that the *mere* printed conception or the *mere* printed contemplation which constitutes the designation of a "compound" is sufficient to show that such a compound is old, regardless of whether the compound is involved in a 35 U.S.C. § 102 or 35 U.S.C. § 103 rejection,[5] we totally disagree.[6] Carrying such proposi-

---

5. At the oral hearing, the solicitor attempted to distinguish the rejection in this case on the basis that it was predicated on 35 U.S.C. § 103 and not on 35 U.S.C. § 102.

6. In Phillips Petroleum Co. v. Ladd, 219 F.Supp. 366, a case decided July 25, 1963 in the District Court of the District of Columbia, a reference stated that a polybutadiene containing 100% cis, 1,4-

tion to the extreme could, we think, result in a holding that a reference reciting the mere desirability of producing thousands of specifically named compounds without anything else is adequate to show that such compounds are old. We do not think that the Von Bramer case was intended to be carried to such an extreme.

■ We think, rather, that the true test of any prior art relied on to show or suggest that a chemical compound is old, is whether the prior art is such as to place the disclosed "compound" in the possession of the public. In re LeGrice, 301 F.2d 929, 49 CCPA 1124; E. I. DuPont de Nemours & Co. v. Ladd, 328 F.2d 547, (D.C.Cir. 1964).

■ Applying the above test to the facts before us, we do not think that Clark's reference to his unsuccessful attempts to prepare fluorine-containing silicone homopolymers would place such homopolymers in the possession of the public and as a corollary would place appellant's invention in possession of the public.[7] As Robinson[8] in 1890 said in section 330 entitled "Prior Publication:

Publication must Fully Communicate the Invention to the Public":

> "Finally, the description must place the invention in the possession of the public as fully as if the art or instrument itself had been practically and publicly employed. In order to accomplish this, it must be so particular and definite that from it alone, without experiment or the exertion of his own inventive skill, any person versed in the art to which it appertains could construct and use it."

Certainly it cannot be said that the disclosure in the Clark reference is such that it would, without the exertion of another's own "inventive" skill, place appellant's invention in the possession of the public.

Since we have found that the appealed claims are patentable over the Clark reference, as stated previously, it is unnecessary to consider whether the Clark reference is legally available as a reference.

For the foregoing reasons the decision of the board is reversed.

Reversed.

---

or trans 1,4- addition cannot be made at any practical temperature. The rejection of the claims upon that reference was based on the contention that since 100% cis is mentioned, the publication was such a disclosure as to deny patentability, the Commissioner relying principally upon the Von Bramer case. In the Phillips case Judge Jackson, who spoke for this court in the Von Bramer case, stated that

" * * * the Von Bramer case differs in its facts from the instant [Phillips] case. In that case, as maintained by counsel for plaintiff, the prior art disclosure was what is known as the 'Geneva' name of a chemical compound defining molecular structure. The properties claimed in the Von Bramer case differed only in degree from those admittedly disclosed in the prior art. *As far as the predictable properties of the Von Bramer case is concerned, they were found in any similar compound, and those compounds were*

*capable of synthesis by recognized classical organic reactions.*

*"Furthermore, in that case there were statements in a number of prior art references that the compound relied upon as anticipatory had been made and used,* and that the five carbon atom alkyl limitation in that case contradicted the statement of the invention in the specification as an arbitrary and meaningless distinction from the prior art." [Emphasis ours.]

7. The examiner has stated that if any "invention" is present in the instant application it exists solely because of the specific polymer, i. e., the copolymer or homopolymer, employed. The board further found that appellant's copolymers are patentably distinct from the copolymers recited in the Clark reference (see Footnote 2).

8. I Robinson on Patents 451 (1890).