58 CCPA

**Application of Earl Phillip MOORE.**

**Application of Harold M. PITT and Harry Bender.**

**Patent Appeal Nos. 8437, 8479.**

United States Court of Customs and Patent Appeals.

July 1, 1971.

Rehearing Denied Oct. 7, 1971.

Francis A. Paintin, Wilmington, Del., attorney of record, for Earl Phillip Moore. James T. Corle, Arlington, Va., and Gerald A. Hapka, Arlington, Va., of counsel.

Wayne C. Jaeschke, Dobbs Ferry, N. Y., attorney of record, for Harold M. Pitt and Harry Bender. Martin Goldwasser, Dobbs Ferry, N. Y., and Edwin H. Baker, Richmond, Cal., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. E. Martin, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

These two appeals from separate decisions of the Patent Office Board of Appeals were argued on the same day, considered together and will be disposed of in a single opinion. The issue we find determinative in both appeals is whether an antedating affidavit must include therein a showing of prior discovery of a utility for a particular chemical compound, in order to be effective in removing a reference against a claim to that compound or the method for its production, where the reference describes the compound and how to make it but fails to disclose a utility therefor, no utility being obvious.

## APPEAL NO. 8437

*Outline of the Proceedings Below*

The single claim before us in the application[1] involved in this appeal is drawn to the compound "perfluorodicyclopentadiene" (hereinafter PFDC). This claim was rejected by the examiner under 35 U.S.C. § 102 as being "fully met" by the disclosure in an article appearing in a British chemistry journal.[2] The cited reference describes the preparation of the compound "perfluorocyclopentadiene" (hereinafter PFC). In a discussion of some of the chemical and physical properties[3] of PFC, it is disclosed that the compound "dimerizes at room temperature."

There appears to be no question that the claimed PFDC is the dimer of the compound PFC or that the cited publica-

---

1. Serial No. 431,621, filed November 24, 1964, entitled "Product".

2. Banks et al., Journal of the Chemical Society (London), pp. 5581–83 (Dec. 1963) (hereinafter "Banks").

3. One of these properties involved the capacity for being oxidized in the presence of a permanganate whereby a mixture of oxalic and difluoromalonic acids is formed. The relevance of this fact will become apparent later on.

tion contains a legally sufficient description of the claimed compound and how to make it. We are, however, confronted with the threshold issue of whether the reference disclosure contains a suggestion of utility for the dimer.

Appellant's antedating affidavit, purporting to have been filed under Patent Office Rule 131,[4] the adequacy of which affidavit is in question here, concededly shows identification and preparation of the claimed compound and asserts that these acts were carried out prior to any date to which the reference disclosure would be entitled. The affidavit does not, however, contain any mention of a utility for the compound and none is alleged to have been obvious.

The examiner evidently was in agreement with appellant that the reference contained no disclosure as to utility. He nevertheless held the affidavit ineffective because there was no mention of utility contained therein. The Board of Appeals sustained the examiner on this point but then went further and held the affidavit deficient on the alternative ground that the reference disclosure did make a utility for the claimed compound obvious. The board stated:

The reference indicates uses for the monomer which would also be fully expected to inhere in the dimer because of the same reactive groups. Note especially the permanganate oxidation to form a mixture of oxalic and difluoromalonic acids.

Appellant thereafter attempted to convince the board that its position with regard to a suggestion of utility for PFDC in the reference was wrong. He filed an affidavit by one Barney, whom the board had previously characterized as "an expert in this art", which set out the affiant's opinion that "from a study of the structure of the latter compound [PFDC] it would not appear that [permanganate oxidation of PFDC] would be capable of forming oxalic and difluoromalonic acids". The board treated this affidavit as having "no status except as an argument", and held to "the view that Banks et al. suggest a utility".

*The Issue Narrowed*

Again we are confronted with a set of circumstances which occurs too frequently in Patent Office appeals. In its review of the examiner's decision in this case, as noted above, the board made a ruling based not upon the facts of record which it had before it, but rather on a finding of a new fact. We recognize the right of the board, under the statute and rules, to make additional findings. We also acknowledge the technical expertise of the individual members of the board in making findings of technical fact based upon their own knowledge and experience. We have consistently sought to give weight to such findings where they do not appear unreasonable on their face and are not challenged by the applicant.

A finding such as was made here, however, supporting as it does an alternative

4. Rule 131

  (a) .When any claim of an application is rejected on reference to a domestic patent which substantially shows or describes but does not claim the rejected invention, or on reference to a foreign patent or to a printed publication, and the applicant shall make oath or declaration as to facts showing a completion of the invention in this country before the filing date of the application on which the domestic patent issued, or before the date of the foreign patent, or before the date of the printed publication, then the patent or publication cited shall not bar the grant of a patent to the applicant, unless the date of such patent or printed publication be more than one year prior to the date on which the application was filed in this country.

  (b) The showing of facts shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from said date to a subsequent reduction to practice or to the filing of the application. Original exhibits of drawings or records, or photographic or photostatic copies thereof, must accompany and form part of the affidavit or declaration or their absence satisfactorily explained.

ground for sustaining the examiner's rejection, and apparently based on nothing more than a bare allegation of scientific fact, does everything but cry out for an opportunity to respond. Appellant here did respond, and challenged the board's assertion with an allegation of his own to the contrary. He supported his assertion with the affidavit opinion of an acknowledged expert in the art. Encouraged and misled, perhaps, by some language in earlier opinions of this court, the board gave little consideration to appellant's assertion. This we feel was wrong. Appellant's response here was more than mere "argument". It was a direct challenge to a finding of fact made for the first time by the board and included with it some evidence in the nature of rebuttal. Under the circumstances, it was entitled to more serious consideration. We shall so treat it.

The contrary assertion made by appellant also does not appear unreasonable to us. In the absence of any cited authority or more detailed reasoning by which we could better evaluate the positions taken, we are compelled to conclude that the Barney affidavit is sufficient to rebut the assertion made by the board and negate its alternative ground for finding the antedating affidavit ineffective. Accordingly, the remainder of this opinion and our decision will be based on the assumption that the cited reference neither contains a disclosure of nor suggests a utility for the claimed compound.

### APPEAL NO. 8479

The invention involved in this appeal relates to a process of producing chlorinated unsaturated hydrocarbons by reacting either of two chlorinated ethylenes with any one of five specified compounds. The specification discloses that certain of the products of that process may be polymerized and used as caulking compounds, adhesives or potting resins.

Claims 1 and 10 [5] relate to appellants' process in its broadest aspect, so far as concerns the reactants, each being set forth in Markush form. Claims 8 and 12 are directed respectively to appellants' specific process for producing the compound 1, 1, 2-trichloropentadiene and to the corresponding product of that process, i. e., the compound itself.

The claims were rejected in view of the disclosure in an article appearing in a Russian journal of chemistry.[6] That article concededly contains a description of the product of claim 12 and of a process of preparing it which differs from the claimed process only in an obvious manner, but it does not describe any utility for the product. The statutory bases for the rejection were, of course, 35 U.S.C. § 102(a) for claim 12 and that section in conjunction with 35 U.S.C. § 103 for the claims to the process. Attempting to overcome the rejection by removing the reference, appellants filed an affidavit showing the prior production of the compound defined in claim 12 by a process within the scope of claims 1, 8 and 10. For purposes of our decision, we will assume that that affidavit contained no showing of a utility for the compound.

### OPINION

The case in point is, of course, In re Wilkinson, 304 F.2d 673, 50 CCPA 701 (1962). That case is directly controlling on the issue as we have framed it, and if it is still the law the board's decisions must be reversed. The Patent Office has taken the position that *Wilkinson* can no longer be the law because it is inconsistent with the decision of the Supreme Court in Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966) and with later opinions by this court. Alternatively, we are urged to reconsider the correctness of the holding in *Wilkinson* and to overrule the decision in

---

5. Appearing in Application Serial No. 89,-640, filed February 16, 1961, for "Production of Chlorinated Unsaturated Hydrocarbons."

6. Petrov et al., Doklady Akademii Nauk SSSR, Vol. 131, pp. 1098–1101 (April, 1960).

that case because the opinions [7] contained therein were "erroneous in law" since they did not consider or explore "the pertinence of all of the provisions of paragraph (b) of Rule 131" applicable to the issue there before the court. We must, of necessity, consider the first point raised, *i. e.*, the continued validity of the holding in *Wilkinson* in view of later pronouncements by this court and the Supreme Court. So doing, and finding that the case does continue as the law, we have taken this opportunity to also consider the solicitor's second point.

*Is Wilkinson Still the Law?*

The question of the pertinency of the Brenner v. Manson decision may be disposed of rather easily. We are of the opinion that that case is not sufficiently in point to be considered as controlling with regard to the narrow issue as we have defined it.

In *Manson*, the applicant was attempting to provoke an interference by copying the claims of a patent. The subject matter involved was a process for producing a chemical compound. The patent with which interference was sought contained a full disclosure of a utility for that compound. Manson's affidavit, filed under Patent Office Rule 204, in which he was required to present facts which would prima facie establish prior invention, was held not to do so. In this respect, his evidence of prior invention was clearly less than and not commensurate with the showing in the patent. In the cases before us, on the other hand, the appellants have made showings fully commensurate with those in the particular references. The issue is whether they should be required to show more.

The narrow holding in *Manson* was that a chemical process is not "useful" in the sense of 35 U.S.C. § 101 unless the product of that process has a specific practical utility. That holding may be extrapolated to the further ruling that a chemical compound is not "useful" in the

sense of the patent law merely because it is a chemical compound. Indeed, later cases of this court have held that even where the compound is readily recognizable as an intermediate for chemical synthesis, it is not "useful" unless the product of that synthesis possesses the requisite utility. See In re Kirk, 376 F.2d 936, 54 CCPA 1119 (1967); In re Joly, 376 F.2d 906, 54 CCPA 1159 (1967). Similarly, certain language in the *Manson* opinion may be interpreted as holding that a claimed process cannot be fully reduced to practice so as to justify an award of priority or the grant of a patent until a use for the product is discovered if one is not already obvious.

The fact remains, however, that the decision in *Manson* was made in the context of a priority contest between two inventors, one of whom was a patentee. The cases before us, on the other hand, are dealing with the ex parte question of patentability to a single inventive entity. The references are publications, no other inventors are involved, and nobody is trying to provoke an interference. We believe the factual situation in *Manson* is simply too remote and the policy considerations there controlling too different for us to conclude that the issues here are governed by the decision in that case or that the holding in *Wilkinson* is necessarily inconsistent therewith.

Our inquiry cannot stop here, however, since it is further asserted on behalf of the Patent Office that subsequent opinions of this court have "eroded" the *Wilkinson* "doctrine" until it no longer has the force of law. To initiate this aspect of our inquiry, we will first consider the *Wilkinson* case itself.

The issue in that case was phrased in the principal opinion as follows:

Since the Stephens reference does not allege or disclose a use, nor is a use alleged to be obvious, the issue is whether, under such circumstances, appellant can properly be required to

---

7. The Chief Judge delivered "the opinion of the court" which was joined by Judge Kirkpatrick. Judges Rich and Smith wrote separate concurring opinions, and Judge Martin concurred in the result without opinion.

show an actual reduction to practice, *including a showing of use*, to overcome the reference. In other words, if Stephens shows A, can appellant be compelled to show A plus B before he can overcome Stephens? [Emphasis added].

The opinion concluded:

We acknowledge the varying degrees of relevance of the cases cited below, as well as by opposing counsel here but find none, including In re Stempel, 241 F.2d 755, 44 CCPA 820, sufficiently in point with the precise fact situation at bar to be controlling.

Since appellants have satisfactorily shown they did everything done by Stephens *prior* to the latter's publication date, they have overcome Stephens as a valid ground of rejection.

As for the two other opinions in that case, Judge Rich stated his view that the principles stated in In re Stempel were fully applicable and controlling. Judge Smith made two points in his opinion. He first attempted to answer the "interference analogy" argument put forward by the Patent Office by pointing out that under such an analogy the reference was evidence only of conception and that therefore appellants need also only show a conception, which, he said, they had. As a second point, he argued that the question involved was not really one of priority but rather of overcoming a prima facie case of lack of novelty. He felt that since appellants there had shown possession of as much as the reference showed, *i. e.*, a conception of the claimed subject matter, at a time prior to the reference date, they had overcome the prima facie lack of novelty evidenced by the reference.

The solicitor argues that the holding in *Wilkinson* was clearly contrary to the specific requirements of part (b) of Rule 131 which sets forth those acts which must be demonstrated in an affivit in order to remove a reference. Reminding us that the requirements of part (b) of the rule include a showing of actual reduction to practice prior to the reference date or of prior conception coupled with due diligence to a subsequent reduction to practice (either actual or constructive), the solicitor points out that the showings involved in the affidavits before us, which parallel that in *Wilkinson*, fall short even of constituting a "conception" under the traditional definition of that term which he says, requires that a use for the claimed compound be at least obvious to a person skilled in the art. He then asserts that, while the court in *Wilkinson* did find such a minimal showing adequate, it has since made rulings concerning the acts which must be shown as evidence of the "completion of the invention" under Rule 131 which are totally inconsistent with the holding in that case.

In In re Harry, 333 F.2d 920, 51 CCPA 1541 (1964) the court stated that, in order to antedate a description of the invention under Rule 131, "the Patent Office must have such facts as will enable it and its reviewing courts to judge whether there was construction and when it occurred, or whether there was diligence." In In re Clarke, 356 F.2d 987, 53 CCPA 954 (1966), the principal opinion states:

Rule 131(a) requires that facts be offered which show "completion of the invention" prior to the effective date of the reference in order to establish prima facie a case of prior inventorship. The term "completion" is further defined by the requirement of subsection (b) of Rule 131 that the facts must establish either reduction to practice, or conception coupled with due diligence until a subsequent actual reduction to practice or the filing of the application. The requirement for such *facts* in establishing prima facie a case of prior inventorship has been articulated in the decision of this court in In re Garratt, 63 F.2d 113, 115, 20 CCPA 878, 882. See Ex parte Stalego, 135 USPQ 37, 38 (Pat.Off.Bd.App. 1961).

We accept the fact that in these cases, and others like them, this court has indicated an approval of the requirement in

Rule 131(a) that the invention be *completed* and of the requirements in part (b) of the rule that certain facts be shown as evidence of such completion. We also concede that the holding in *Wilkinson* may appear inconsistent in that a showing of facts apparently not in compliance with Rule 131(b) was there held adequate to remove a reference.

It does not necessarily follow from the above, however, that approval of Rule 131 in the circumstances of the indicated cases constitutes an "erosion" of the validity of the very limited ruling made in *Wilkinson*. In the first place, the cited cases are not really close enough to be in any way controlling here. In *Harry*, for example, there was no issue as to whether the invention there involved could be "completed" without the discovery of a useful function therefor. In *Clarke*, the question was whether the affidavit showing was adequate to establish prior invention with regard to a particular *scope* of subject matter. In *Wilkinson*, on the other hand, and in the cases before us now, the determinative issue had to do with the extent of prior *activity* connected with the claimed subject matter which must be shown in order to nullify the anticipatory effect of the reference disclosure.

More importantly, we have found no instance of a statement or holding of this court which compels the conclusion that the holding in *Wilkinson* and the requirements of Rule 131 are necessarily inconsistent. On the contrary, we believe, as the following analysis should indicate, that they are both part of a larger statutory scheme by which an applicant may establish that he has a right to a patent on particular claimed subject matter.

### Is Wilkinson Good Law?

The statutory basis for permitting an applicant to file an affidavit showing prima facie prior invention and thus re-moving a cited reference has to be found in subsections (a) and (e) of 35 U.S.C. § 102, the combined effect of which provides that an applicant shall be entitled to a patent unless *"the invention* was * * * described * * * in a printed publication [or an earlier-filed United States patent] * * *, before *the invention* thereof by the applicant for patent."* (Emphasis added). It will be noted, as emphasized, that there are two occurrences of the words "the invention" in the statutory provisions indicated. Inserting for the word "thereof" appearing immediately after the second occurrence what is obviously the subject to which it refers, the statute would read "before the invention of the invention by the applicant." Thus read, logic and common sense compel the conclusion that the words "the invention" were intended to possess a different meaning at each occurrence.

In the context of the first occurrence it seems indisputable that what is being referred to is the thing or class of things invented, *i. e.*, the subject matter encompassed by the claim. The context of the second occurrence makes it clear, however, that it is not the *subject matter* of the claimed invention which is being referred to, but rather the *event* of invention, that is, the act of producing or coming into possession of the subject matter being claimed.[8]

■ ■ A reference cited under the provisions of the statute mentioned above is not considered as "evidence" of a prior act of invention by someone else (although, in the case of subject matter disclosed and claimed in a patent such might be true). Rather it is cited as indicating that the particular subject matter disclosed therein is not "new", in the sense that it is already within the domain of public knowledge. The language of § 102(a) and (e) thus makes it clear that if the applicant can prove "invention" on his part prior to the ef-

---

8. *Compare*, P. Janicke, The Varied Meanings of "Invention" in Patent Practice, Pat. Law Perspectives (Appendix I, 1971). See also, the comment by Mc-Quarrie appearing in 45 JPOS 69 (1963).

fective date of the reference, that reference will be overcome as a bar to patentability. Rule 131 and its predecessor, Rule 75, were promulgated to provide an applicant with a vehicle by which he can present evidence of such prior "invention". Thus, part (a) of Rule 131 requires the applicant to "make oath to facts showing a completion of the invention" before the effective date of the reference. Part (b) [9] of the rule requires that showing of facts to be such as to establish prior reduction to practice or prior conception "coupled with due diligence" to a subsequent reduction to practice, either actual or constructive. This parallels the requirements for establishing the completed act of invention in an interference proceeding, as authorized in the provisions of § 102(g) and sanctioned by many years of court-accepted practice.

It is the above-mentioned parallel with interference procedure that seems to be the stumbling block in the particular area of the law involved in the instant appeals. The assumption manifest in the solicitor's interpretation of the requirements of the rule is that an applicant establishes prior "invention" only when he shows the completion of those acts which would justify an award of priority to the applicant in an interference with the inventor of the subject matter disclosed in the reference (assuming that the effective date of the reference was the earliest date to which that inventor would be entitled). Placing the Patent Office position in a statutory context, under the interpretation set out above, it translates to the following propositions: that wherever the *act* of invention is referred to in the patent statutes it must be presumed that Congress intended that act to possess the same essential elements; that the most comprehensive definition of the act of invention is that developed out of the law surrounding 35 U.S.C. § 102(g); and that the proof of "prior invention" to remove a reference, whether it be cited under 35 U.S.C. § 102(a) or 102 (e), necessarily requires prior completion of every element of the act of invention (subject of course to the exceptions involving diligence).

■ Accepting the logic of the Patent Office position, however, requires that one ignore certain basic important distinctions between an interference proceeding on the one hand and an ex parte proceeding to obtain a patent on the other. In the former, one party is nearly always going to prevail, a patent will issue, and the knowledge pertaining to the involved invention will very likely become public and be exploited under the protection of that patent. In an ex parte proceeding, however, the principal question is the applicant's right to a patent under the statute. The public may well gain knowledge only when a patent is granted. It happens to be the law that where there has been public disclosure by another of the subject matter of a patent claim along with enough enabling description to place the capability of preparing that subject matter within the possession of the public at a time prior to an applicant's filing date, such publication will prima facie negative novelty in the subject matter and prevent its being claimed directly in a patent. In re Wilder, 429 F.2d 447, 57 CCPA 1314 (1970); In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964). Such a disclosure in an application would not, however, give an applicant the statutory right to a patent, even if there were no anticipating reference, unless that disclosure were

---

9. It appears to be accepted fact that the addition of part (b) to the rule did not effect any change in the law or practice surrounding Rule 131. See Amdur, Patent Office Rules and Practice, § 131(d) (1948). *Cf.* In re McIntosh, 230 F.2d 615, 43 CCPA 845 (1956). Since as early as 1880, the Patent Office has followed interference priority practice as far as possible. See Robbins, The Requirement of Utility in Chemical Patent Applications, 20 Geo.Wash.L.Rev. 727, 35 JPOS 413 (1952); Ex parte Gasser, 1880 C.D. 94; Ex parte Hunter, 1889 C.D. 218.

also accompanied by a satisfactory description of how to use the claimed subject matter if such is not already obvious. 35 U.S.C. § 112. In re Hafner, 410 F.2d 1403, 56 CCPA 1424 (1969). In a situation such as we have before us, where the applicants have, in their applications, fully satisfied the statutory requirements for obtaining a patent, in effect offering to give the public more than was described in the reference, policy considerations totally different from those prevailing in a priority contest command that the Patent Office logic be rejected.[10] In *Wilkinson*, the court did reject it.

■ The basis of the *Wilkinson* decision was, simply, that an applicant need not be required to show any more *acts* with regard to the subject matter claimed than can be carried out by one of ordinary skill in the pertinent art following the description contained in the reference. The discovery or identification of a chemical compound and the determination of how to make it are significant inventive acts with regard to that compound. Under the *Wilkinson* rationale, the *third* inventive act, (*i. e.*, the determination of a practical utility when one is not obvious) need not have been accomplished prior to the date of a reference unless the reference also teaches how to use the compound it describes. That case holds that an applicant may be compelled to prove only that he had prior possession of "the thing itself" in order to remove a reference which shows *no more than that* to the public. We believe that holding is consistent with the provisions of 35 U.S.C. § 102(a) and are convinced that it is appropriate in view of the policy considerations we find governing in this set of circumstances.

■ ■ Viewed in light of the traditional dichotomy between "conception" and "reduction to practice", the disclosure in a publication such as the references involved here is evidence only of the *mental* component connected with any of the acts referred to above. It has always been the law that an applicant wishing to antedate a reference disclosure must establish prior accomplishment of more than the mere conception of the subject matter of his invention. *Wilkinson* did not change this. Consistent with the requirements of Rule 131, that case still requires a "showing of facts" establishing that concrete acts were carried out in connection with the relevant subject matter prior to the reference date. Nevertheless, it should be clear that, under *Wilkinson*, the "conception" and "reduction to practice" which must be established under the rule need not be the same as what is required in the "interference" sense of those terms. The parallel to interference practice found in Rule 131(b) should be recognized as one of convenience rather than of necessity. We emphasize that in the section of the statute relevant to these peculiar circumstances, the second occurrence of the words "the invention" can refer only to the completion of those acts the accomplishment of which can be carried out from the description contained in the reference disclosure.

*Summary*

■ In sum, we adhere to the holding in *In re Wilkinson*, finding no superior authority or policy inconsistent therewith. The decisions on review, being directly contrary to that holding, must accordingly be reversed.

Reversed.

---

10. The decision in *In re Stempel, supra,* while clearly dealing with the first occurrence of "the invention" under our statutory analysis and thus not directly pertinent, was nevertheless based upon similar policy considerations. The principles set out in the *Stempel* opinion are relevant to the issue before us and have been followed where applicable. Thus, as in *Stempel*, it may be said that it is not Rule 131 which is at odds with the circumstances here involved but rather the interpretation placed on the language of that rule. On the other hand, it may well be advisable to change the language of the rule to avoid further misinterpretations.