**Application of Hector Alfons Vanden EYNDE et al.**

**Patent Appeal No. 8934.**

United States Court of Customs and Patent Appeals.

July 19, 1973.

Alfred W. Breiner, Arlington, Va., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Robert D. Edmonds, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the rejection of claims 16–21 of appellants' application [1] as based on a specification which fails to satisfy the requirements of the first paragraph of 35 U.S. C. § 112. We remand this case to the board for the reasons and purposes hereafter set forth. The most difficult aspect of this appeal is the determination of the propriety of the board's refusal to consider certain patents and publications submitted by appellants subsequent to the board's original decision as an accompaniment to a request for reconsideration. To fairly explain the issues before us and our resolution of them, we initially recount the positions of the principals as developed below.

## THE PROCEEDINGS BELOW

### The Invention

The claims on appeal are all chemical compound claims. Claim 16 defines the genus and reads as follows:

16. A fluoro-alkyl hydrazine corresponding to the following formula:

$$(X{-}CF_2)_n {-}\underset{\underset{R}{|}}{C}H{-}NH{-}NH_2$$

wherein:

X is a member of the group consisting of a hydrogen atom and a fluorine atom,

R is a member of the group consisting of a hydrogen atom, lower alkyl or phenyl, and

n is a positive integer from 1 to 25 inclusive.

The specification characterizes the invention as relating to "new fluoro-alkyl-hydrazines" and "[m]ore particularly," "a process for the preparation thereof." Indeed the specification for the most part discusses the manner of making the claimed compounds. As for utility, the specification states the following:

The fluoro-alkyl hydrazines according to the present invention are important starting materials for the synthesis of several organic compounds such as 1-fluoroalkyl-2-pyrazoline-5-one colour couplers, which form magenta azomethine dyes on colour development of exposed light-sensitive silver halide materials with aromatic primary amines.

### Proceedings Before The Examiner

That statement of utility was the focus of the examiner's rejection of the claims first under both sections 101 and 112, and later under section 112 alone. The examiner considered the statement "vague and indefinite," and generally regarded it as insufficient to teach one skilled in the art how to use the claimed invention. The examiner questioned the manner in which the claimed hydrazines could be converted to color couplers and the manner in which the so-formed couplers could be used to yield magenta dyes on color development.

Appellants contended that one skilled in the relevant art would have been able to make color couplers from the hydrazines and would have known how to use the couplers in color development. Appellants generally argued that the utility requirements and all disclosure requirements of the patent laws were satisfied.

At one point during prosecution, appellants introduced a page of a treatise on photographic chemistry by Glafkide,[2]

---

1. Serial No. 471,437 filed July 12, 1965, entitled "Fluoro-Alkylhydrazines and Process for the Preparation Thereof."

2. Glafkide, *Photographic Chemistry*, vol. II, page 601, Fountain Press (London 1960).

the relevant portion of which reads as follows:

(d) *Pyrazolines.* These magenta couplers with the structure

$$H_2C \overset{4}{\underset{}{\quad}} \overset{3}{\underset{}{\quad}} C-R$$
$$OC\ 5 \qquad 2\ N$$
$$N\ 1$$
$$N$$
$$Ar$$

[A7636]

are very widely used for colour films.

\* \* \*

The pyrazolones are prepared by hot condensation of a phenylhydrazine $Ar-NH-NH_2$ with a keto compound such as acetoacetic ester $CH_3-CO-CH_2-CO-O-C_2H_5$ in the presence of water and alcohol. They are insoluble in water, but soluble in caustic soda. Their sulphonated derivatives are soluble.

The simplest coupler is 1–*phenyl*–3–*methyl* – 5 – *pyrazolone*. The aryl sulphonated compound is prepared from sulphophenylhydrazine. With diethyl–p–phenylene diamine, a magenta dye is obtained with the formula:

$$C_2H_5$$
$$C_2H_5 N \overset{}{\underset{}{\quad}} N-C \overset{}{\underset{}{\quad}} C-CH_3$$
$$OC \qquad N$$
$$N$$
$$SO_3H$$

[A7637]

Before coupling, the keto group $-CO-CH_2-$ is isomerized to the enol form $-C(OH)<CH-$.

Appellants stated that:

[Glafkide] teaches the "classical" method of producing magenta color couplers with a pyrazolone structure by means of the hot condensation of a hydrazine with a carbonyl containing compound such as a substituted acetoacetic ester. Thus, the method of converting the fluoroalkyl hydrazine of the present invention to 1–fluoroalkyl–2–pyrazoline–5–one color couplers is well known in the art.

The examiner first commented on Glafkide in his Answer stating:

The Glafkide publication does disclose the reaction of a *phenylhydrazine* with a keto compound to give a pyrazolone which then couples a primary aromatic amine to give a magenta azomethane compound, but the *instant* hydrazines are not *phenylhydrazines* and there is no assurance that the instant hydrazines would so react or what the reaction conditions would be. [Emphasis in original.]

The examiner continued to hold that the specification disclosure of utility is insufficient, although he limited the basis of the rejection to the first paragraph of § 112.

In a reply brief following the Examiner's Answer, appellants expressly acknowledged the examiner's comment regarding the Glafkide publication. Appellants argued:

This statement would have greater significance if not for the expressed and implied indication by appellants that the conditions used with a phenylhydrazine when applied to the fluoroalkyl-hydrazines will result in a useful product.

*Proceedings Before The Board*

The board quoted the statement of utility appearing in appellants' specification and phrased the appellants' position as follows:

It appears to be appellants' view that, in the light of the Glafkide publication, one having ordinary skill in the art would know how to use the claimed compounds as starting materials to produce the 1–fluoroalkyl–2–pyrazoline–5–one compounds, and furthermore would know how to employ the latter for the suggested purpose in photographic emulsions, all without further disclosure than that quoted above.

The board agreed with the examiner's view of Glafkide stating:

We note * * * that the starting hydrazines and compounds produced by the Glafkide publication are different from those which would be employed and produced according to appellants' suggestion, in that they have aryl groups in place of the fluoroalkyl groups. We do not find that one skilled in the art would be able to predict with certainty that the fluoroalkyl compounds would react identically and under the same conditions as the aryl compounds of Glafkide, nor is there evidence in the record that they in fact do so.

In support of this conclusion the board made reference to a patent[3] (hereafter the Eynde patent) issued on an application[4] (hereafter the Eynde application) filed by appellants on July 14, 1965, two days subsequent to the filing date of the application involved in this appeal. The Eynde patent discloses in detail the manner of using the fluoroalkyl hydrazines to form color couplers and the use of such couplers in color development.

It was presumably intended that the Eynde application be filed concurrently with the present application, and the present specification as originally filed made express reference to the Eynde application for a disclosure of the preparation of color couplers. However, the Eynde application was filed later for one reason or another, and reference thereto was deleted from the present application. The board was therefore aware of the Eynde patent which matured from the Eynde application and of the fact that appellants contemplated the methods disclosed therein as the means for converting the fluoroalkyl hydrazines to color couplers.

The board held as follows:

We note that in * * * [the Eynde patent] the conditions actually used are not the same as in the publication. The patent in all cases conducts the reaction in the presence of acetic acid; the reference employs a hot condensation in the presence of water and alcohol. It therefore is not even apparent from the record before us that the claimed compounds can in fact be used in the same manner as the known compounds of Glafkide * * *. Nor do we find that it would have been obvious that the fluoroalkyl pyrazoline–5–one compounds would be usable in the same manner in photographic compositions. * * * At the most, it might appear "obvious to try" the reactions and conditions indicated by the Glafkide publication upon appellants' novel hydrazine compounds, but this does not appear to be the standard by which sufficiency of disclosure under the first paragraph of 35 U.S.C. 112 is determined. We will therefore sustain the rejection for lack of sufficient disclosure of how to use the compounds.

We observe at this point that the examiner had not based his conclusions on the differences between the Eynde patent reaction environment and that disclosed in Glafkide. That was clearly a rationale new to the proceedings. We cannot ascertain the extent to which the board's rationale influenced its affirmance. For example, we do not know whether the board considered it an alternative basis for affirmance or whether the board regarded it is providing essential support to the examiner's reasoning.

Appellants filed a request for reconsideration of the decision of the board accompanied by a number of patent and publication references offered for the purpose of demonstrating the knowledge possessed by those skilled in the art. The board noted that the references were not "urged upon [it] in the brief," and since the references were not of record prior to the board's original decision, the board refused to consider them.

---

3. U.S. Patent No. 3,462,270 issued August 19, 1969.

4. Serial No. 472,017.

The board adhered to its original decision.

In response to the board's refusal to consider the reference material, appellants contended that the board erred in its assessment of appellants' position, noted above, to the effect that "in the light of the Glafkide publication," one skilled in the art would have known how to use the claimed compounds. Appellants justified the submission of additional reference material as follows:

> Appellants asserted and assert that having the teaching of the specification, *one skilled in the art of photographic chemistry* would be able to employ the invention in light of the disclosure of utility at page 3 of appellants' specification. The Glafkide reference was referred to as being *exemplary* of what was known and available to the *skilled photographic chemist*. It was not intended to be a summary of the only knowledge known and available to the skilled photographic chemist. Appellants, in their Petition for Reconsideration, referred to the numerous other patents and publication[s] to clearly establish the host of art in this area. This is art which was available to the Examiner in the Patent Office and to the Board of Appeals to determine what knowledge was available to a skilled photographic chemist. This art could have been obtained merely by calling an examiner in Group 160, the art unit responsible for examining photographic cases.

> An applicant is presumed to have all prior art before him at the time he makes an invention. It is submitted that it is not too much for an applicant to ask that the examiner and the Board of Appeals be held to the same standard, with it being presumed that all the pertinent art was available to the Examiner. [Emphasis in original.]

*The Positions of the Parties on Appeal*

The solicitor states that the rejection here involved is based on the "how-to-use" requirement of the first paragraph of section 112. It is emphasized to the court that the truth of the assertions that the fluoroalkyl hydrazines can be converted to pyrazoline-one color couplers and that such color couplers function in the manner described in the specification is not here questioned. Rather, the gist of the rejection is said to be that one skilled in the art would not have known how to so utilize the claimed compounds, at least in the absence of probative evidence to the contrary.

The solicitor urges that the board correctly refused to consider the reference material submitted after its decision. He observes that the board agreed with the examiner that Glafkide is insufficient since directed to *phenyl*hydrazines, and he argues that none of the references subsequently filed bears directly on the additional point raised by the board respecting the differences between the Glafkide and Eynde patent reaction environment conditions. The solicitor concludes that the board made no new factual assumptions the rebuttal of which might justify considering additional reference material.

Appellants contend that the claimed compounds have utility and that one skilled in the art would know how to use them given the specification statement of utility. Appellants additionally contend that Glafkide demonstrates the manner in which the claimed compounds can be used. They argue that as a matter of fact, the phenyl portion of the Glafkide structure, like the fluoroalkyl group of their own compound, is not involved in the pyrazoline-one-forming reaction.

Appellants assert that in any event the additional reference material clearly establishes that at the time the present application was filed, the level of skill in the pertinent art was such that the manner of using the compounds would have been apparent. It is appellants' position that a "new rationale" of the board prompted the submission of that material and that In re Moore, 444 F.2d 572, 58 CCPA 1340, 170 USPQ 260 (1971) is authority for the proposition that the

board should have considered it. Alternatively, they ask this court to take judicial notice of those prior patents and publications.

## OPINION

### The "How-to-Use" Requirement

We accept the solicitor's view that the rejection before us is based solely on the "how-to-use" requirement of § 112. The first paragraph of § 112 requires in pertinent part that:

> The specification shall contain a written description * * * of the manner and process of * * * using * * * [the invention] in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to * * * use the same * * *.

That statutory requirement is fulfilled where one possessed of the knowledge had by one skilled in the art could use the invention given the specification disclosure without undue experimentation. A patent applicant may offer evidence, such as patents and publications, to show the knowledge possessed by those skilled in the art and thereby establish that a given specification disclosure is enabling. See, e. g., Martin v. Johnson, 454 F.2d 746, 59 CCPA —— (1972). In such a situation, it is the knowledge possessed by those skilled in the art as of the filing date that is of relevance. See Tummers v. Kleimack, 455 F.2d 566, 568, 59 CCPA ——, —— (1972).

When an examiner initially turns to an application, he may properly lodge a rejection of a claim as based upon a specification which is not in compliance with § 112, first paragraph, if it appears reasonable to conclude that one skilled in the art would have been unable to use the invention at the time the application was filed. When that conclusion *is* reasonable, the burden is on to the applicant to rebut it, if he can, such as by offering evidence as discussed above. See, e. g., In re Gardner, 475 F. 2d 1389 (CCPA 1973).

It is clear that an applicant must be permitted to respond to a position assumed by the examiner or the board. However, the response must be timely. If an applicant fails to challenge the examiner's conclusion regarding enablement, or fails to do so timely, the rejection stands.

We reject the contention advanced by appellants that evidence submitted by an applicant in response to a § 112 rejection is timely at any point during prosecution because the examiner or board could have located it. We adhere to the view that it is the applicant's responsibility to prove that a prima facie reasonable conclusion of nonenablement is in fact unreasonable in view of the state of the art. Orderly and logical examining procedure compels that view. Moreover, we reject the notion that judicial or administrative notice may be taken of the state of the art. The facts constituting the state of the art are normally subject to the possibility of rational disagreement among reasonable men and are not amenable to the taking of such notice. If evidence of the knowledge possessed by those skilled in the art is to be properly considered, it must be timely injected into the proceedings.

We do agree with appellants that where the board advances a position or rationale new to the proceedings, as it is empowered to do and quite capable of doing, the appellant must be afforded an opportunity to respond to that position or rationale by the submission of contradicting evidence. This court so held in In re Moore, supra, and we expressly reaffirm that view. The board's refusal to consider evidence which responds to such a new rationale is error.

### The Board's Refusal to Consider the Evidence in This Case

Appellants in this case strenuously and primarily asserted that the board misconstrued the import of the submission of the Glafkide reference during prosecution before the examiner. They

argued that the board treated Glafkide as the only evidence of the state of the art whereas they intended it as merely exemplary of many patents and publications in the field of photographic chemistry. In appellants' view, the position of the board as to the role of Glafkide in establishing the state of the art was itself a new rationale which justified the submission of additional evidence.

Appellants' contention is untenable. The board originally decided the appeal on the record before it. Glafkide was the only reference material which appellants had offered to that point.

■ In discussing the submitted material in the request for reconsideration, appellants pointed to disclosures which allegedly tend to support the view that those skilled in the art would have considered the reaction of a phenylhydrazine to form a pyrazoline color coupler to be directly applicable to the conversion of a fluoroalkyl hydrazine contrary to the examiner's and board's belief. Appellants were confronted with this argument in the Examiner's Answer and expressly acknowledged it, and attempted to answer it, in a reply brief. If there is evidence to support their position, appellants should have presented it at that point. The board did not raise that issue, and we agree with the solicitor that there is no basis in the board's decision for a justification for the submission of evidence on that issue after the board's decision. The board did not err in refusing to consider the later-filed evidence to that extent.

■ However, the board clearly went off on its own in considering the differences between the Glafkide reaction environment and the Eynde patent reaction environment. Appellants offered evidence allegedly showing the prior art use of the Eynde patent conditions in hydrazine-to-color coupler reactions. By demonstrating that both the Glafkide and Eynde patent reaction conditions were known prior to filing, appellants might have convinced the board that at the time of filing, one skilled in the art would not have had reason to doubt the efficacy of the Glafkide environment. We disagree with the solicitor's analysis of the evidence offered on this point, and we conclude that the board did commit error in refusing to consider that evidence in rebuttal of the board's newly advanced position.

### The Manner of Using the Color Couplers

■ Thus far in our opinion we have not mentioned the board's findings with respect to the manner of using the color couplers. We agree that in order for the specification to be enabling in the sense of § 112, one skilled in the art would have to have been able to use the claimed hydrazines in the manner asserted in the specification, i. e., as a starting material for the synthesis of color couplers. However, color couplers are, in general, unquestionably well known materials, and utility for color couplers per se need not be separately established. We accordingly see no necessity for appellants to demonstrate how to use the color couplers. Given that the claimed compounds are useful in the manufacture of products having known utility, appellants' specification is sufficient if it enables one skilled in the art to make those products. We accordingly hold that the board was also in error to the extent that it agreed with the examiner that the specification is insufficient for failure to teach how to use the pyrazoline-one color couplers.

### The Remand

We have made two findings of error which seriously undermine the decision of the board. We have found that the board erroneously refused to consider evidence allegedly bearing on its new rationale and that it erroneously regarded inquiry into the manner of using products obtained by reaction of the claimed compounds as proper. We remand this case to the board for action not inconsistent with these findings or this opinion in general.

Remanded.